Walter J. FLECK et al., Plaintiffs,

v.

Warren SPANNAUS et al., Defendants.

No. 3–75 Civ. 178.

United States District Court,
D. Minnesota,
Third Division.

Aug. 5, 1976.

John R. Kenefick, Briggs & Morgan, St. Paul, Minn., Maurice J. McCarthy, Ettelson, O'Hagan, Ehrlich & Frankel, Chicago, Ill., for plaintiffs.

Warren R. Spannaus, Atty. Gen., State of Minn., by James P. Gerlach and Richard S. Slowes, Sp. Asst. Attys. Gen., St. Paul, Minn., for defendants.

Curtis L. Roy, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., Frank C. Heath, Jones, Day, Reavis & Pogue, Cleveland, Ohio, amici curiae for White Motor Corp., and White Farm Equipment Co.

Before HEANEY, Circuit Judge, and DEVITT and ALSOP, District Judges.

## MEMORANDUM ORDER

Plaintiffs have commenced the above-entitled action challenging the enforceability and constitutionality of the Minnesota Private Pension Benefits Protection Act, Minn. Stat. § 181B.01 et seq. (1974) (hereinafter the Pension Act). The relevant facts are set forth in *Fleck et al. v. Spannaus et al.,* 412 F.Supp. 366 (D.Minn.1976), where the court, sitting as a single judge, denied certain aspects of plaintiffs' motions and requested the convening of a three-judge court.

Presently before the three-judge court is plaintiffs' motion for summary judgment enjoining the enforcement of the Pension Act on the grounds that (1) it became null and void by its own terms when the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (hereinafter "ERISA") was enacted; and (2) it is in violation of numerous provisions of the United States Constitution. Defendants have moved for abstention in order to permit the Pension Act to be construed by the state court. Alternatively, defendants argue that the Pension Act is constitutional in all respects.

Prior to addressing the various motions, the court in the exercise of its inherent power is constrained to examine the existence of a justiciable controversy as it relates to the three individual plaintiffs, Fleck, Hamler and Richert. Article III, § 2 of the Constitution limits the jurisdiction of the federal courts to cases or controversies. The standing of the plaintiffs to pursue their claims is an aspect of the case or controversy requirement. *Urban Contractors Alliance of St. Louis v. Bi-State Development Agency,* 531 F.2d 877, 881 (8th Cir. 1976).

The Eighth Circuit recently articulated its views on standing by stating:

The test of constitutional standing has been variously expressed as "real and immediate injury" to the plaintiff, *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561, 44 U.S.L.W. 4095, 4098 (1976), "a distinct and palpable injury to himself", *Warth v. Seldin, supra,* 422 U.S. [490] at 501, 95 S.Ct. [2197] at 2206 [45 L.Ed.2d 343 (1975)], or "injury in fact", *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 218, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). But under any articulation of the standard it is fundamental that the plaintiff himself must have suffered the injury he seeks to redress. For if the plaintiff has not "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the

court so largely depends for illumination of difficult constitutional questions * * * ", *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), no "case or controversy" is presented.

*Urban Contractors, supra,* 531 F.2d at 881.

■ The individual plaintiffs have challenged the enforceability and constitutionality of the Pension Act in Counts I–III of the amended complaint. Fleck and Hamler are salaried employees of the corporate plaintiff, Allied Structural Steel Company (hereinafter Allied). Richert is the Fiduciary of the Allied Structural Steel Company Salaried Employees Pension Plan (hereinafter the Pension Plan). However, the rights and obligations of the individual plaintiffs under the Pension Plan are not affected by the Pension Act. The Pension Act is addressed solely to the relationship between terminated employees and the employer and the relief which it seeks to provide can be asserted only against the employer. *See* Minn.Stat. §§ 181B.03 and .11. Thus it does not appear that any injury will inure to the individual plaintiffs and the court is compelled to conclude that such plaintiffs have not sufficiently alleged a "personal stake in the outcome" to meet the constitutional standing requirements. Accordingly, the claims of Fleck, Hamler and Richert, as contained in Counts I–III of the amended complaint will be dismissed.

■ Plaintiffs have moved for summary judgment on the grounds that the Pension Act by its own terms has self-destructed. Minn.Stat. § 181B.17 provides in relevant part:

". . . [S]ections 181B.01 to 181B.17 [the Minnesota Pension Act] shall become null and void upon the institution of a mandatory plan of termination insurance guaranteeing the payment of a substantial portion of an employee's vested pension benefits pursuant to any law of the United States.

It is unclear precisely when the conditions set forth in the so-called "null and void provision" were or will be satisfied. ERISA contains a subchapter covering termination insurance, 29 U.S.C. § 1301 *et seq.,* which became effective on September 2, 1974. 29 U.S.C. § 1381. However, ERISA's vesting provisions for plans in existence on January 1, 1974 did not become effective until after December 31, 1975. 29 U.S.C. § 1061(b)(2).

In addition to the question of the duration of the Pension Act, it is also unclear what happens to any rights which have accrued or any proceedings—administrative or judicial—which may have been instituted. No savings clause is contained in the Pension Act and no precise statutory rule of construction exists to aid in the construction of the null and void provision. *See* Minn.Stat. ch. 645 (1974). The Attorney General argues that the self-destruct language in the null and void provision is analogous to the repeal of a law and that accrued and existing actions should be preserved as in the case of repeal. *See* Minn. Stat. § 645.35.

Faced with these uncertainties of state law, it is difficult for this court to forecast how the null and void provision might be interpreted by the state courts. More importantly, depending on the interpretation given to such provision, it is entirely possible that this court need not address the constitutional questions raised herein [1] and thus comport with the well established federal policy of avoiding constitutional adjudication where it is not absolutely essential to the disposition of the case. *Hagans v. Lavine,* 415 U.S. 528, 547 n. 12, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Where, as here, uncertain questions of state law are closely intertwined with the constitutional challenge the Supreme Court has often stated that the state tribunal should be given an opportunity to provide ". . . an authoritative declaration of

---

1. E. g., a constitutional resolution would be unnecessary if the Minnesota Supreme Court interprets the Pension Act to have become null and void on September 2, 1974 and that as a result all accrued and existing causes of action likewise ceased to exist at that time.

applicable state law." *Reetz v. Bozanich,* 397 U.S. 82, 85, 90 S.Ct. 788, 789, 25 L.Ed.2d 68 (1970); *City of Meridian v. Southern Bell Telephone & Telegraph Co.,* 358 U.S. 639, 640, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959). Such principles were recently reaffirmed in *Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976).

The special circumstances of this case provide compelling reasons for extending to the Minnesota Supreme Court an opportunity to provide an authoritative declaration on the null and void provision. The Minnesota Legislature expressly indicated that the Pension Act was to have a limited duration and the opportunity of the State supreme court to construe such provision would serve to minimize federal-state friction. *See Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

However, rather than merely abstaining from interpreting the null and void provision, thereby creating ". . . the delay and expense to which application of the abstention doctrine inevitably gives rise," *England v. Medical Examiners,* 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440 (1964), this court chooses to avail itself of the Minnesota certification procedure, Minn.Stat. § 480.061 (1974).

This type of procedure has been recognized by the Supreme Court and used by the Court on various occasions. *See e. g., Bellotti v. Baird,* —— U.S. ——, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); *Clay v. Sun Insurance Office,* 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964); *Dresner v. Tallahassee,* 375 U.S. 136, 84 S.Ct. 235, 11 L.Ed.2d 208 (1963). The Minnesota certification statute has been recognized by the Eighth Circuit [2] but the court's research has not disclosed any instance in which it has actually been used.

The certification procedure is not without its critics [3] but the court is persuaded that the unique circumstances of this case call for an articulation by the Minnesota Supreme Court and that certification is the most efficient means to achieve it. The court is confident that the Minnesota Supreme Court will expeditiously resolve the issues herein certified to the end that these proceedings may then go forward. Accordingly, the questions of the duration of the Minnesota Pension Act and the existence of causes of action thereunder will be certified to the Minnesota Supreme Court pursuant to Minn.Stat. § 480.061.

In the interim, while the certified questions are pending, this court chooses to go forward to establish such additional facts as are required for a final determination of all constitutional issues if the same becomes necessary. Pursuant to Fed.R.Civ.P. 53 a master will be appointed to determine (1) the contributions to the Pension Plan by the terminated Minnesota employees of Allied; (2) the actuarial assumptions which were applied to the Pension Plan; (3) the cost of pre-paid annuities under the Pension Act which would be purchased for the terminated employees of Allied; and (4) such other matters as the master deems relevant and necessary for a final determination of the constitutional issues.

Upon the foregoing,

IT IS ORDERED That the claims of Walter J. Fleck, Edyth A. Hamler and E. A. Richert, as contained in Counts I–III of the amended complaint be and the same hereby are in all respects dismissed.

IT IS FURTHER ORDERED That a certification order be issued to the Minnesota Supreme Court to construe the language of Minn.Stat. § 181B.17.

### CERTIFICATION ORDER

Pursuant to Minn.Stat. § 480.061 (1974) the United States District Court for the District of Minnesota hereby certifies the following questions of law based on the stated facts to the Minnesota Supreme Court.

---

**2.** *See Guillard v. Niagara Machine and Tool Works,* 488 F.2d 20, 24–25 (8th Cir. 1973).

**3.** *See In re Elliott,* 74 Wash.2d 600, 446 P.2d 347, 371 (1968) (Hale, J., dissenting).

**24**

## STATEMENT OF FACTS

The relevant facts of this action are set forth in two previously issued Memorandum Orders of this court. *See* Memorandum Order dated March 18, 1976, 412 F.Supp. 366, and Memorandum Order dated August 5, 1976. Additional facts are set forth in a stipulation entered into between the parties. These orders and stipulation are submitted to the Minnesota Supreme Court for its consideration.

Also submitted to the court for its consideration of the questions herein are the pleadings filed in this action and a copy of the Allied Structural Steel Company Salaried Employees Pension Plan.

## QUESTIONS OF LAW

(1) Upon what date did the Minnesota Private Pension Benefits Protection Act, Minn.Stat. § 181B.01 *et seq.* (1974) (hereinafter the "Minnesota Pension Act") become null and void pursuant to Minn.Stat. § 181B.17?

(2) What effect does the termination of the Minnesota Pension Act have upon any cause of action which may have accrued prior to the date of such termination but upon which no administrative proceeding had been commenced?

(3) What effect does the termination of the Minnesota Pension Act have upon any cause of action which was the subject of a pending administrative proceeding on the date of the termination of the Act?

IT IS SO ORDERED.