**Willie ALEXANDER and Jacqueline Pinion et al., Plaintiffs,**

v.

**Arthur SILVERMAN et al., Defendants.**

**Civ. A. No. 71–C–565.**

United States District Court, E. D. Wisconsin.

April 25, 1973.

Steven·H. Steinglass and Richard M. Klein, Freedom Through Equality, Inc., Milwaukee, Wis., for plaintiffs.

James J. O'Donnell, Asst. Corp. Counsel, Milwaukee, Wis., for defendants Silverman, Pokorny, Geiger, and Haber.

Ward L. Johnson, Asst. Atty. Gen., Madison, Wis., for defendant Schmidt.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

The issue in this class action is whether welfare applicants are constitutionally entitled to a statement of reasons and an administrative hearing after their application for general welfare relief is denied. Jurisdiction arises under 28 U.S.C. § 1343, 42 U.S.C. § 1983.

Defendant Silverman is the director of the Milwaukee County Department of Public Welfare (hereafter "DPW") which provides general relief to all applicants found eligible for such relief in accordance with Chapter 49 of the Wisconsin Statutes. Defendants Pokorny, Geiger, and Haber are other officials in the DPW. Although defendants provide those already receiving general relief with a statement of reasons and an administrative hearing on request before their general relief is reduced or terminated, they do not provide any statement of reasons or hearing to new applicants who are denied relief. Plaintiff Jacqueline Pinion was such a new applicant. Moreover, defendants admit that her application did not indicate on its face that she was ineligible for general relief. When denied relief, Miss Pinion unsuccessfully requested a written statement of reasons and a hearing. On behalf of herself and all others similarly situated, she moves for summary judgment contending that defendants' policy violates the due process requirements of the fourteenth amendment. I grant her motion.

The United States Supreme Court enunciated the principles that govern this case in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Although the precise issue in *Goldberg* was the right of welfare recipients to a pre-termination hearing, the holdings that welfare benefits enjoy due process protection and that an individual's interest in receiving benefits outweighs the state's interest in summarily determining his eligibility support the position of the plaintiffs here.

The *Goldberg* Court rejected the argument that the due process protection which is afforded to "life, liberty, and property" did not extend to welfare benefits because they were granted as a privilege rather than as a right. Instead the Court included welfare benefits in a broad concept of "property," noting that such benefits were a "matter of statutory entitlement for persons qualified to receive them." *Goldberg*, supra, at 262, 90 S.Ct. at 1017. It would be irrational to hold that an individual's entitlement to welfare is affected by whether he has been receiving welfare in the past.

Under *Goldberg*, I must, of course, balance the interests of the individual and the government to determine the characteristics of the procedures which due process requires. The *Goldberg* Court emphasized the obvious importance which the decision to grant or deny welfare benefits may have for an individual. An erroneous decision which denies relief to an eligible individual may deprive him of the means of subsistence. In short, such a person's interest in having a meaningful opportunity to point out errors to the decision-makers is overwhelming. Accordingly, the Court held that even providing a hearing after the decision reducing or terminating benefits was made would not constitute due process. Only a pre-termination hearing would suffice, so compelling was the interest of individual recipients in the uninterrupted flow of benefits.

■ In this case the interest of applicants in having a meaningful opportunity to point out errors to the decision-makers is just as overwhelming. Giving an applicant the right to a hearing before he is finally denied relief will increase the state's expenses but not to such a significant extent as to justify denying such a right, for here plaintiffs do not request a pre-denial hearing, as was in effect provided in *Goldberg*, but only a post-denial hearing. Even a post-denial hearing is not sought for all

applicants refused relief but only for those, like plaintiffs, who submit applications which do not indicate on their face that they are clearly ineligible for relief. Taking into account the indirect costs to the state of providing the hearings requested—such as the tendency of administrators who must defend a decision denying relief to err on the side of granting relief, especially when the applicant is likely to request a hearing— the reasoning of *Goldberg* suggests that the plaintiffs' interest in having post-denial hearings outweighs the defendants' interest in avoiding them.

■ When administrative hearings are necessary, the administrators should be allowed considerable latitude in fashioning the format the hearings are to follow. They are undoubtedly more familiar than the courts with the factors determining eligibility. Not only are they more likely to know what to look for, but because of their experience with welfare applicants, they are also more likely to know how to look for it. Nevertheless, the following minimum elements required or suggested in *Goldberg* are necessary to make any administrative review meaningful:

■ 1. A written statement containing the reasons for denying the applicant's request for general relief and informing the applicant of his right to a timely and impartial administrative hearing.

2. A hearing on request in which—

(a) The applicant has the opportunity to present his own arguments and evidence orally by himself or with counsel of his own choosing;

(b) The applicant has an opportunity to cross-examine the witnesses relied on by the department;

(c) The decision must rest solely upon the legal rules and evidence adduced at the hearing, and where there is an issue of credibility or veracity concerning, for example, whether the applicant left his most recent employment for a "valid reason," the decision may not rest on mere uncorroborated hearsay;

(d) The decisionmakers will not have participated in making the determination under review.

3. A brief written statement after the hearing indicating the reasons for the final determination and the evidence relied upon.

To insure that these procedures will be provided within a time frame acceptable to all, I requested the parties to suggest possible schedules. Of course, any definite time limit by its very nature will often function arbitrarily. But even arbitrary time limits seem preferable to indefinite limits in light of the applicant's need to know the status of his case and the time when a decision will be made. The schedules set forth in the following order reflect an effort to accommodate defendants' desire for enough time to make eligibility decisions with the deliberation their importance merits and plaintiffs' desire for enough speed to minimize the hardship delay imposes upon indigent applicants.

### ORDER

It is ordered that plaintiffs' motion for summary judgment be and it hereby is granted.

It is further ordered that:

1. Defendants and their agents, employees, successors, and all persons acting in concert or cooperation with them or at their direction or under their control are, except as otherwise provided in paragraph 2 below, to provide all members of plaintiffs' class whose applications for general relief are denied by the Milwaukee County Department of Public Welfare (hereafter "DPW") with the following:

(a) A written statement containing the reasons for denying the applicant's request for general relief and informing the applicant of his right to a timely and impartial administrative hearing on his eligibility for relief. Such statement should be mailed to the address shown on the application within three working days after the decision to deny relief was made. When a hearing is requested by the applicant, it is to be held within five working days after the DPW has received the request. If a hearing is not held within that time, the DPW shall provide the applicant requesting a hearing with general relief, the amount of which shall be based on the normal DPW general relief budget for a family of the applicant's size. Such general relief shall continue until a hearing is provided and a subsequent decision rendered.

(b) A hearing on request in which—

(i) The applicant has the opportunity to present his own arguments and evidence orally by himself or by counsel of his own choosing;

(ii) The applicant is given an opportunity to cross-examine the witnesses relied on by the DPW;

(iii) The decision must rest upon evidence adduced at the hearing, and where there is an issue of credibility or veracity concerning, for example, whether the applicant left his most recent employment for a "valid reason," the decision may not rest on mere uncorroborated hearsay;

(iv) The hearing must be held before an impartial decisionmaker who should not have participated in making the decision under review. However, prior involvement in some aspects of the case will not necessarily bar a welfare official or employee from acting as a decisionmaker.

(c) A brief written statement which shall indicate the reasons for the final determination and the evidence relied upon and which shall be furnished to the applicant within five working days after the hearing.

2. If it appears from the face of the application that the applicant is ineligible under the eligibility regulations which are furnished to all persons who apply for general relief, then the DPW may dispense with the procedures ordered herein and shall not be obligated to grant general relief pursuant to this order. However, this paragraph shall

not apply where the application raises an issue of fact or judgment.

3. Defendants shall provide a copy of this order to all case workers, case aids, and all other employees of the DPW who are responsible for determining eligibility for general relief. Defendants shall also post copies of this order in all waiting rooms and waiting areas maintained for applicants for general relief.

4. Defendants shall prepare a form which in plain, simple language briefly describes the notice and hearing procedures required by this order. A draft of such form must be submitted to plaintiffs' counsel for approval within ten days of its preparation, and any disputes as to its content will be resolved by the court. Copies of this form are to be provided to all persons who apply for and are denied general relief.